M. L. BOONE, Appellant,

v.

FORT WORTH & DENVER RAILWAY COMPANY, Appellee.

No. 15372.

United States Court of Appeals Fifth Circuit.

June 30, 1955.

Henry E. Wise, Asst. U. S. Atty., Fort Worth, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellant.

James C. Sanders, Amarillo, Tex., Culton, Morgan, Britain & White, Amarillo, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

This case calls for the construction and application of the following portions of Section 9 of the Universal Military Training and Service Act:

"(a) Any person inducted into the armed forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. * * *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

* * * * * *

"(B) if such position was in the employ of a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay;

* * * * * *

"(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall

be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

"(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment." 50 U.S.C.A.Appendix, § 459.

M. L. Boone, plaintiff in the District Court and appellant here, was a railway telegrapher employed by the Fort Worth and Denver Railway Company, the defendant-appellee. The agreement, effective July 1, 1940, between the defendant railway and The Order of Railroad Telegraphers, the union in which the plaintiff held membership, included provisions designated as Rule 21 relating to reduction in force. The portions of this rule here pertinent are:

"(a) When reducing force an employe who is displaced may first exercise his seniority in the same office by displacing any junior employe (except the agent), ability being sufficient.

"If the agent comes under paragraph (b) of this rule, and is one of the five youngest employes, this exception will not apply.

"(b) Or it will be permissible to displace any of the five youngest telegraphers who are regularly assigned and or any of the five youngest non-telegraph agents who are regularly assigned."

The agreement was supplemented by a letter dated February 15, 1946, from the railway to the union of the following tenor:

"Dear Sir:

"Referring to our discussions on January 26th and 30th, 1946, in regard to manner and method whereby agents and telegraphers will assert their seniority on returning from military service, to re-enter our railroad service.

"It is hereby understood and agreed by and between Fort Worth and Denver City Railway Company and the Wichita Valley Railway Company, on the one hand, and the Order of Railroad Telegraphers, for the Employes, on the other hand, that an employe returning from military service, who, under the Selective Service and Training Act of 1940 [54 Stat. 885], the Service Extension Act of 1941 [55 Stat. 626], Public Resolution No. 96, 76th Congress [54 Stat. 858], National Guard or Reserve Act, and Merchant Marine Reemployment Act, Public Law No. 87, 78th Congress [50 U.S.C.A.Appendix, § 1471 et seq.], is eligible to, and qualifies under the law, and in accordance with said laws, for re-entry into our railroad service, will be re-established in our employ by the following plan:

"A veteran on military leave of absence who returns to Railway service will be permitted to go back to his former position unless it is held by a senior employe, in which event the returning veteran will assert his seniority elsewhere subject to his qualification. The employe thus displaced will assert his seniority under the provisions of Rule 21.

"If a returning veteran, in the assertion of his seniority, does not elect to return to his former position, he cannot assert his seniority to any position except one which has been advertised under Rule 19 while he was on military leave of absence, and such assertion will be subject to Rule 18.

"Yours truly,
/signed/ C. B. Ragon.
"Agreed:
/signed/ S. L. Greenwood,
General Chairman,
The Order of Railroad
Telegraphers."

Rules 18 and 19 of the agreement are not material to this controversy.

The plaintiff, prior to entering the army, was employed by the railway at its Childress, Texas, station. He was then working the so-called first trick. The word "trick" in railroad and perhaps other parlance has the same meaning as shift. Working round the clock, the first shift goes on at eight in the morning and off at four in the afternoon, the second trick from four until midnight, and the third from midnight until eight the next morning. The plaintiff entered military service on October 3, 1950. On plaintiff's entry into the service, the first trick at Childress was advertised and bid in by G. D. Massey who had only a few months seniority. He was displaced or, as it is called, "bumped", by Ross L. Holloway, whose seniority dated as of July 28, 1919, under Rule 21 of the union contract.

The plaintiff was released from active duty in the military service on September 11, 1952, and on the following day he made a telegraphic application for a return to Telegrapher, First Trick, at Childress. He was told that he was not entitled to his former position, referred to the 1946 letter agreement, and advised to place himself under Rule 21. He ascertained that among the positions held by the five telegraphers with least seniority was the second trick at Chil-

dress. This position he took and it he was holding at the time of the trial.

The plaintiff protested the action of the railway, contending he was entitled to a first trick position. The railway rejected the claim and this suit followed. The testimony showed that the work of the first trick is heavier than the other two, that except for the difference in the volume of work the duties of all tricks are substantially the same, and that some telegraphers had a preference for one of the tricks while other telegraphers would choose a different trick. The plaintiff testified that he took the second trick at Childress in preference to the other places which he could have secured under the union contract and letter agreement because "that was my former place of employment. That's where my wife and I decided we would be best located as far as being back where I came from, and so forth". He said that because of his working until midnight he was left with "no social life whatsoever". It was stated in his testimony, that he was not entitled to his same position back, and that he would consider an equivalent position as being one "with like duties" and the "same hours". He was asked "Are there such positions on the railroad from Texline to Fort Worth, such as Fort Worth, Wichita Falls, Childress—". His answer was "Amarillo". He was asked if the main reason he preferred the first trick was that the second trick interfered with his social life. He answered, "That is part of it", and said the rest of it was "it is just more convenient to work daylight hours."

The Court entered its judgment for the defendant railway, dismissing the cause, which judgment is here for review. The plaintiff-appellant poses a question as to whether the statute requires the employer to give a returning employee a position on the same shift as he worked prior to induction where he could not have been displaced from that shift had he not entered the service. He also presents the question as to whether he had

been reemployed in a position of "like seniority, status and pay". The statute gave the plaintiff the right to the position held at the time of induction or "a position of like seniority, status and pay". He did not get the identical position. The position he did get was of like seniority and pay. Our question is, was the position he took one of like status?

The provisions of the Act are to be liberally construed for the benefit of those who left private life to serve their country. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110.

The diligence of counsel has not discovered nor has our search found any case where like status is made to depend upon a restoration to the same shift as that worked by the veteran prior to induction except Grubbs v. Ingalls Iron Works Co., D.C.N.D.Ala., 1946, 66 F. Supp. 550, 554. There the employee worked the first or day shift. On his discharge from military service, he was offered a like position on the second or night shift. This he declined attributing his preference to better transportation to and from work on the day shift, the artificial light of the night shift was hard on his eyes, and he could sleep better at night than during the day. We find little in the well reasoned opinion of Judge Lynne that is helpful here because in the Grubbs case the employer had the right to assign its employees of the veteran's classification to day or night shift at will. In the opinion it was said, "To hold that assignment to the day shift involved a 'status' to which petitioner was entitled to be restored would accord a significance to that word entirely out of proportion to the obvious meaning of 'pay' and the Supreme Court's definition of 'seniority'."

By the statute the veteran is "protected against receiving a job inferior to that which he had before entering the armed services." Fishgold v. Sullivan Drydock & Repair Corp., supra [328 U.S. 275, 66 S.Ct. 1111]. The purpose of the Act is set forth in Bova v. General Mills, Inc., 6 Cir., 1949, 173 F. 2d 138, 140, where it is said:

"The clearly expressed intention of the Congress is two-fold: First, to protect the veteran by insuring him reemployment, and second, to give the employer leeway in adjusting to the dislocations caused by the departure of men in great numbers to fill the armed services. It therefore included in the statute an alternative provision, permitting the employer in accordance with the dictates of sound management, to give the veteran not the identical position, but one of 'like seniority, status, and pay,' that is, similar employment."

We are unwilling to hold that a returning veteran has been given an inferior position or one of different status where the only difference in the former and latter positions was the hours worked. The deprivation of social life and convenience of working daylight hours are not such factors as affect the plaintiff's employment status. He availed himself of a position of "like seniority, status and pay" as that which he left to enter the armed services.

The plaintiff has urged us to consider the proposition that the agreements between the union and the railway cut down the benefits secured veterans under the Act. The Fishgold case, supra, is cited, and among the principles stated in this landmark decision, is the rule that no agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. If in any case the agreements between the defendant and the union of which plaintiff is a member would have the effect of depriving a veteran employee of his former position or a position of like seniority, status and pay, then the agreements must yield to the Act. There is no place here for the application of this doctrine.

The judgment of the District Court is Affirmed.