BRASS AND COPPER WORKERS FED-
ERAL LABOR UNION No. 19322,
AFL–CIO, Plaintiff,

v.

AMERICAN BRASS COMPANY, KENO-
SHA DIVISION, a subsidiary of Ana-
conda Copper Company, Defendant.
Civ. A. No. 57–C–185.

United States District Court
E. D. Wisconsin.
May 5, 1959.

David Leo Uelmen of Padway, Goldberg & Previant, Milwaukee, Wis., for plaintiff.

F. H. Prosser of Shaw, Muskat & Paulsen, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Action under Section 301 of the National Labor Management Relations Act, 1947, 29 U.S.C.A. § 185, for specific performance of an arbitration provision of a collective bargaining agreement.

Plaintiff, Brass and Copper Workers Federal Labor Union No. 19322, AFL-CIO (hereinafter referred to as the "Union"), and defendant, American Brass Company, Kenosha Division, a subsidiary of Anaconda Copper Company (hereinafter referred to as the "Company"), executed an Amended Pension Plan Agreement and a Collective Bargaining Agreement, both of which were in effect on April 1, 1955, when the Company compulsorily retired all employees who were then 69 years of age or older even though these employees were not eligible for pension under said Agreements.

On April 4, 1955, the Union protested these retirements orally in a grievance meeting with the Company's representatives and also wrote a letter to the Company protesting the "illegal discharge of certain employees" because of age and requesting their reinstatement. The Company did not answer the Union's letter of April 4, 1955.

On April 12, 1955, the Union wrote to the Company as follows:

"In accordance with Article VII Section 4 lines 199 to 202 we request that the Company join with us in submitting the question of illegal discharge of employees mentioned in our communication to you under date of April 4, 1955, to the U. S. Department of Conciliation for disposal.

"Please advise at your convenience."

Section 4 referred to in the above letter appears to be subsection 4 of Section 1 of Article VII of the Agreement.

The Company replied by letter on April 14, 1955, as follows:

"We acknowledge receipt of your communication of April 12, 1955 wherein you request that the Company join you in seeking the services of the U. S. Department of Conciliation.

"The Company does not consider that the retirement of certain employees referred to in your letter of April 4, 1955 to be illegal discharges and consequently cannot join you in your request."

The Union thereupon, unilaterally, requested the Federal Mediation and Conciliation Service to intervene. After conferences with the Company, Virgil H. Burtz, the Commissioner, informed the Union by letter of May 23, 1955, that " * * * very little, if anything, could be gained by a joint conference with one of our Commissioners present, as both parties' positions are firm."

On June 6, 1955, the Union by letter to the Company requested that the dispute be submitted to arbitration.

The Complaint in this action was filed on August 7, 1957.

The above facts have been submitted by stipulation. The parties also agree that the Union did not request arbitration in writing within ten days of the Company's letter of April 14, 1955, or within ten days of Commissioner Burtz's letter of May 23, 1955.

The Union, as well as the Company, apparently has proceeded on the theory that the Union was seeking arbitration of the discharges under Article VII, Section 3, of the Agreement. It is the position of the Union that the letter of the Company of April 14, 1955, is not a final answer as contemplated by said Section 3. Never having received a final answer, the Union's request for arbitration was, therefore, timely. It contends that any issue as to compliance with the procedural re-

quirements of the arbitration provisions of the Agreement is to be referred to the arbitrator for determination. Should the court determine this issue and find that the request was not made timely, it contends that the Union's rights are not thereby waived since the Company was not prejudiced thereby.

The Company concedes the substantive arbitrability of the discharge dispute. It contends that the issue of the procedural arbitrability of the claim is for the court and that the failure of the Union to comply with the procedural requirements of the arbitration provision of the Agreement constitutes a waiver of the Union's right to enforce the Company's promise to arbitrate.

The questions presented by the controversy are the following:

1. Whether, in an action for specific performance of an agreement to arbitrate, an issue as to procedural arbitrability of a substantively arbitrable dispute is for determination of the District Court, or whether such issue shall be referred to the arbitrator; and

2. Whether noncompliance with the procedural requirements of the Agreement constitutes a waiver of the Union's right to arbitration.

■ The substantive law to be applied in actions arising under Section 301 of the National Labor Management Relations Act is federal law which the court must fashion from the policy of national labor laws. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, at page 457, 77 S.Ct. 912, 1 L.Ed.2d 972.

■ Generally it has been held that the question of arbitrability of the subject matter, or substantive arbitrability, is for the District Court in the first instance. Local No. 149, of Am. Federation of Technical Engineers (A.F.L.) v. General Electric Co., 1 Cir., 1957, 250 F.2d 922, certiorari denied 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813; International Union, United Auto Aircraft v. Benton Harbor Malleable Industries, 6 Cir., 1957, 242 F.2d 536, certiorari denied 355

U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31. Substantive arbitrability is to be determined from the scope of the agreement.

■ The law governing the determination of procedural questions of arbitrability, such as timeliness of request, inaction or failure to comply with conditions precedent to promises to arbitrate, is not settled.

One view holds that where the substantive claim is arbitrable, the question of procedural compliance is also for the arbitrator as part of the question of the claim. The reason for this rule is stated in Insurance Agents' Intern. Union A. F. of L. v. Prudential Ins. Co., D.C.E.D. Pa. 1954, 122 F.Supp. 869, 872 (decided under Pennsylvania law) as follows:

> "Arbitration is here to stay, and particularly where the parties have elected to submit their differences to it, the courts should not by hair splitting decisions hamstring its operation."

The Court of Appeals for the First Circuit has examined this question in recent cases, decided after Textile Workers Union of America v. Lincoln Mills, supra, approved enforcement of executory agreements to arbitrate by the remedy of specific performance under Section 301 of the National Labor Management Relations Act and determined that federal law governed such actions. That court has held that the District Court must determine initially that the party against whom relief is requested is in violation of a promise to arbitrate the particular issue. Local 201 Intern. Union of Elec. Radio and Mach. Workers, A.F.L.-C.I.O. v. General Electric Co., 1 Cir., 1959, 262 F.2d 265. The District Court must determine, as a matter of law, whether all conditions precedent to arbitration have been fulfilled. Boston Mutual Life Ins. Co. v. Insurance Agents' Intern. Union (A.F.L.-C.I.O.) 1 Cir., 1958, 258 F.2d 516. In that case the District Court had ordered the parties to proceed to arbitration, leaving the question of whether or not the Union had pressed for arbitration within a reasonable time for the arbitrator. The Court

of Appeals reversed the judgment and remanded the matter to the District Court. It held that the particular contract did not provide for arbitration of the procedural question since this did not constitute a "grievance." Only "grievances" as to disputes regarding the interpretation and application of terms of the agreement were held arbitrable.[1]

The same court further explained its rule on procedural arbitrability in Local 201, Intern. Union of Elec. Radio and Mach. Workers, A.F.L.-C.I.O. v. General Electric Co., supra. Whether this is a question for the court, or whether it is for the arbitrator in case of a substantively arbitrable claim is to be determined by inferences drawn from the provisions of the contract as to the parties' intentions.

■ The parties agree that the substantive claim is arbitrable and that the Union is proceeding under Section 3, Article VII, of the Agreement, specifically dealing with review in arbitration of Company action in making discharges for cause or disciplinary layoffs.[2] In this section, review in arbitration is conditioned on the request being made in writ-

1. On remand, the District Judge held that the delay was not unreasonable and not prejudicial to the Company. 36 Labor Cases § 65998, D.C.Mass., 171 F.Supp. 125.

2. Article VII of the Agreement governs the Grievance Procedure. This provides as follows:

"Section 1. Should there be any complaint, controversy, or grievance involving the terms of this Contract by an employee or the Union or the Company, the same shall be handled in the following manner:—

"1. Between the immediate foreman and the Union Steward in the division.

"2. Between the Department Foreman and the Department Committee. At this point, the grievance or controversy shall be reduced to writing on a blank allowing for notations as to action or disposition. Copies of such form properly filled out shall be given to both parties."

3. (This provides for further conferences and negotiation between the Union Bargaining Committee and the Management of the Company and bringing in additional representatives of the Company and of the American Federation of Labor.)

"4. In the event that the parties are then unable to agree, either party or both parties may call in the U. S. Department of Conciliation."

Section 2. (This provides for appeals by employees discharged or suspended for disciplinary reasons.)

"Section 3. The Company agrees that its action in making discharges for cause or giving disciplinary layoffs, may be reviewed in arbitration, at the request of either party, but such request shall be made in writing within ten (10) days after the Company's final answer in writing to the Union."

The remaining provisions of Article VII have no application in this action.

Article VIII, Arbitration, provides insofar as pertinent:

"Section 1. Should any dispute arise between the Company and the Union as to interpretation or application of any part of this Agreement which cannot be settled between the parties, then the matter may be submitted to arbitration. This must be done within ten (10) days following the date when it is determined that the parties cannot agree at the Third Step in the grievance procedure. Except that if either party gives notice of taking the matter to the Fourth Step, then arbitration may be appealed to within ten (10) days after it is determined that no agreement can be reached by the Fourth Step."

The "steps" referred to in the Section are the corresponding subsections of Section 1, Article VII.

Section 2. (This deals with the constitution of the Arbitration Board.)

"Section 3. Matters to be arbitrated shall be limited to the settlement of specific claims arising out of the interpretation or application of the specific terms and provisions of this Agreement. The Arbitration Board shall have no power to add to, subtract from, or modify any of the terms of this Agreement. No question of a change in the wage scale or differentials shall be subject of arbitration. Before the submission of a grievance or dispute to arbitration, the Company and the Union shall set forth in writing specifically the issue to be submitted to arbitration, and the Arbitration Board shall confine its decision to such issue. It is understood and agreed that only one issue at a time may be arbitrated, unless the parties mutually agree to do otherwise."

ing within ten days after the Company's final answer in writing to the Union.

Article VIII of the Agreement is the arbitration provision. Section 1 thereof provides that any dispute arising between the Company and the Union as to interpretation or application of any part of the Agreement "which cannot be settled between the parties" may be submitted to arbitration after certain steps of the grievance procedure have been complied with.

Section 3 of Article VIII provides that the Arbitration Board shall have no power to add to, substract from, or modify any of the terms of the Agreement; excludes certain subjects from arbitration; and states that only one issue is to be arbitrated at a time unless there is mutual consent to do otherwise.

Unlike the agreement in Local 201, Intern. Union of Elec. Radio and Mach. Workers, A.F.L.-C.I.O. v. General Electric Co., 1 Cir., 1959, 262 F.2d 265, the collective bargaining agreement between the parties here contains no provision governing who is to determine the question of arbitrability. A claim respecting the timeliness of the request for review in arbitration of a dispute as to the meaning of "final answer" goes to the "interpretation and application of any term of the agreement" and would, therefore, by nature be an arbitrable claim. However, Article VIII of the Agreement, the arbitration provision, suggests by its terms that any dispute, in order to be considered an arbitrable dispute, is one that has been the subject of attempted negotiation and settlement between the parties. In this sense, the claim as to procedural compliance has not been discussed between the parties prior to the commencement of this action, nor has it been made the subject of the grievance procedure. Such a claim, raised as a defense in this action, is not an arbitrable dispute at this time.

Procedural compliance is a separate issue, distinct from the question of the legality of the discharges. While the Company may raise the question of waiver of rights as a defense, this does not go to the merits of the discharge issue. The Company has not consented to submitting this additional issue to the arbitrator.

In the absence of a controlling provision in the Agreement, the terms thereof do not give rise to an inference that it was the intention of the parties to submit the issue of procedural arbitrability to the arbitrator as part of another, otherwise arbitrable, claim. Following the view of Local 201, Intern. Union of Elec. Radio and Mach. Workers, A.F.L.-C.I.O. v. General Electric Co., supra, and Boston Mutual Life Ins. Co. v. Insurance Agents' Intern. Union, 1 Cir., 1958, 258 F.2d 516, the issue of procedural arbitrability here is for the court.

While the parties assumed that the Union was proceeding under Article VII, Section 3, of the Agreement, it appears, nevertheless, that the Union had resort to certain portions of the general arbitration provision, Article VIII. One difference between these provisions appears to lie in the fact that under Section 3 of Article VII, resort to the U. S. Conciliation Department is not called for, while under Article VIII, this is an optional step.

The term "final answer," relevant to setting the time running for requesting arbitration under Section 3, Article VII, must be interpreted in light of the preceding sections and the actual happenings between the parties. Prior to arbitration, the discharged employee has the right to appeal to the Company through the Union Bargaining Committee for a review of his case. Apparently something in the nature of such a review has been had in this case in the "grievance meeting" which took place on April 4, 1955. At this time the Company made clear its position that it did not consider the discharges illegal. When the Union subsequently requested the Company to join it in conciliation proceedings (unnecessarily so if proceeding under Article VII, Section 3), the Company reiterated its position in writing. Its refusal to join the Union in a final attempt at settlement does not permit a suggestion of a possibility of further negotiation or

attempted settlement. After the Company stated its position in the letter of April 14, 1955, nothing further remained to be done except a request for arbitration under Section 3 of Article VII. Under these circumstances, this letter of the Company may be considered its "final answer" on this question.

By way of comparison, the construction placed on a letter by the Supreme Court of Wisconsin in Aluminum Goods Mfg. Co. v. Wisconsin Employment Relations Board, 1956, 271 Wis. 597, 74 N.W. 2d 154, 155, may be noted. There a letter which left open the door to further negotiation was held not to be a "final decision relative to said grievance."

■ Assuming that the Union believed it was proceeding to arbitration under Article VIII, its attempted compliance with step four of the Grievance Procedure, i. e. conciliation, was optional under the Agreement. In view of the Company letter, this step might reasonably have been deemed futile and one which the Union would not have been required to pursue. The letter of Commissioner Burtz of May 23, 1955, affirmed that no agreement could be reached through conciliation. The Union did not request arbitration within ten days of receipt of the Commissioner's letter as required by Article VIII, Section 1. It appears, therefore, that regardless of whether the Union sought arbitration under Article VII, Section 3, or under Article VIII, it failed to comply with conditions to the promise of the Company to arbitrate as set forth in the Agreement.

The conditions, in unambiguous language, provide for a specific period of time in which requests for arbitration must be submitted. These terms do not appear unreasonable or harsh on their face.

■ The grant of specific performance rests in the sound judicial discretion of a court of equity and must be determined by the peculiar circumstances of each case in light of general equitable principles. Neary v. Markham, 10 Cir., 1946, 155 F.2d 485. It is neither equitable, nor does the court have the power to rewrite the contract entered into by the Union and the Company.

In the absence of the Union's compliance with the specific procedural requirements of the Agreement, the Company's refusal to arbitrate is not in violation of the Agreement, notwithstanding the absence of any forfeiture provisions coupled to the conditions precedent of the arbitration promise. The Union has lost its rights to enforcement of the arbitration promise by noncompliance.

The court adopts the stipulation of facts as its findings of fact. The conclusions of law are as set forth in the opinion.

Counsel for the defendant is directed to prepare an order dismissing the action, submitting it to opposing counsel for approval as to form only.