BOSTON MUTUAL LIFE INSURANCE COMPANY, Plaintiff, Appellant,

v.

INSURANCE AGENTS' INTERNATIONAL UNION (AFL-CIO), Defendant, Appellee.

No. 5362.

United States Court of Appeals First Circuit.

Heard June 5, 1958.

Decided July 24, 1958.

Richard J. Walsh, Boston, Mass., with whom Francis E. Silva, Jr., and Warner, Stackpole, Stetson & Bradlee, Boston, Mass., were on brief, for appellant.

Isaac N. Groner, Washington, D. C., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This is another appeal involving § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, as applied to provisions of a collective bargaining agreement relating to arbitration.

The subject matter bristles with difficulties, some of which we indicated in our opinion in Local No. 149, etc. v. General Electric Co., 1957, 250 F.2d 922. An application for a writ of certiorari

was denied in that case. 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813. Consequently, our decision there has become the law of the First Circuit. We referred to the view held in responsible quarters that the interests of effective arbitration would best be served by leaving to the arbitrator, in the first instance, the question of arbitrability. We thought that considerations of this sort might properly persuade the parties to draw the terms of submission in broad language. But we further pointed out that when one of the parties needs the aid of a court of equity, under § 301, and asks the court for a decree of specific performance of a contract to arbitrate, the court, before rendering such a decree, has an inescapable obligation to determine as a preliminary matter whether the defendant did contract to refer the issue to arbitration. We have no disposition to whittle away our holding in Local No. 149, etc. v. General Electric Co. Of course, practical considerations as to what would best promote effective labor arbitration might lead the court, in construing ambiguous language, to adopt an interpretation giving a broad scope to the arbitrator's function. In such a case, however, it is the court which would be determining as a preliminary matter whether the parties had contracted to refer the particular issue to arbitration.

It seems to us that in the case at bar the district court did not sufficiently adhere to the teaching of Local No. 149, etc. v. General Electric Co.

The complaint in this case was filed by Boston Mutual Life Insurance Co., an employer, seeking a declaratory judgment under § 301 to the effect that the arbitrator did not have jurisdiction to arbitrate the grievance of one Herbert Jacobson arising out of his discharge by the Company, and seeking an injunction permanently enjoining the Union defendant from proceeding further in any such arbitration. As part of its answer, the Union filed a counter-claim under § 301 alleging that it had complied with each and every term of the contract with respect to the arbitration of the "Jacobson termination grievance" and asking a declaration that enforcement of the collective bargaining agreement requires "that the American Arbitration Association proceed with its administration and processing of the arbitration of the Jacobson termination grievance * * * and that said arbitration case be heard in accordance with the applicable Association Rules and proceed to an award", and asking further for a decree requiring the Employer to comply promptly and faithfully with the award which shall be entered in said arbitration case, and to take any other action required by the contract for the processing and completion of this arbitration case in accordance with said contract.

The Employer is a Massachusetts corporation with its principal place of business in Boston. The defendant named in the complaint is the Insurance Agents' International Union (AFL-CIO), a labor organization which represents employees in an industry affecting commerce, as defined in the Act. The Union's principal office is located in Washington, D. C., though its Local 243, which is involved here, has its offices in Cambridge, Mass.

On January 31, 1956, the Employer and the Union executed a collective bargaining agreement effective May 20, 1955, to May 20, 1957, which was subsequently extended to June 20, 1957. This agreement contains a typical grievance procedure (Art. XVIII) which, if unsuccessfully pursued, may be followed by arbitration (Art. XIX). The pertinent provisions of the agreement read as follows:

"Article II

"Purpose and Intent of the Parties

"The purpose of the Employer and the Union in entering into this Labor contract is to set forth their agreement on compensation, hours, and working conditions, and other conditions of employment, to pro-

vide orderly collective bargaining relations between the Employer and the Union, to secure a prompt and fair disposition of grievances, to eliminate interruptions of work and interference with the efficient operation of the Employer's business, and to promote the mutual interests of the Employer, its policyholders and the Agents."

"Article XVIII

"Grievances

"The Employer agrees that the Union may have a Relations Committee composed of not more than three (3) agents in each of the District Offices of the Employer. The Employer further agrees that there shall be a Company-Wide Relations Committee composed of not more than five (5) persons designated by the Union. Grievances within the ordinary jurisdiction of the District Manager shall be subject to discussion in the first instance between the District Manager of the District Office of the Employer and the Relations Committee of said District Office. Prior to any discussion, such grievances shall be prepared in writing on forms furnished by the Union in quintuple, one for the Home Office of the Company, one for the District Manager, one for the District Relations Committee, one for the local Union, and one for the Insurance Agent's International Union in Washington, D. C. Any grievance must be presented in writing within twenty-five (25) working days of the event upon which it is based. Any Home Office suspension or termination shall be brought to the attention of the local Union president in writing within two (2) days of Home Office receipt of notification or sooner if possible of such suspension or termination. The District Manager will, within two (2) working days of the meeting with the District Relations Committee, render a decision in writing in quin-

tuple, with copies to the parties as above stated. In the event that any grievance is not settled between the District Office Relations Committee and the District Manager of that office, said Relations Committee shall have the right to file with the Employer in writing within seven (7) days a pertinent statement of the dispute and within seven (7) days of the presentation of such matter to the Employer, the Director of Agencies, after meeting with the Company-Wide Relations Committee if that is deemed advisable shall render a decision on the grievance and notify the Relations Committee submitting such grievance, as well as the local Union president, of his decision. If the Union is dissatisfied with the decision of the Director of Agencies on the grievance, it shall become a subject of discussion between an Employer's Committee of not less than three and the Company-Wide Relations Committee on notice in writing to the Employer within ten (10) days of the decision of the Director of Agencies. Said meeting shall take place within seven (7) days of such notice.

"The Employer agrees that the Company-Wide Relations Committee may take up any matter with the Director of Agencies, in the first instance, which does not fall within the ordinary jurisdiction of the District Managers.

"The Employer agrees that an international officer of the Union may participate in any discussion between the Employer and the Company-Wide Relations Committee.

"A duly authorized representative of the Union shall at all reasonable times and places have access to the District Manager and may have with him at such time the Office Relations Committee. Nothing contained in this Agreement shall restrict in any way the right of a member of the collective bargaining unit to consult his District Manager on any matter.

Nothing herein contained shall abridge the right of the District Manager or Staff Manager to consult with any agent on Company business in his office in the regular course of business of such District Office.

## "Article XIX

## "Arbitration

"No grievance shall be subject to arbitration unless it involves:

"(a) A dispute about the interpretation or application of any provision of this Agreement or the application of any rule or regulation of the Employer now or hereafter in force.

"(b) The termination, suspension, or disciplinary action against any senior agent.

"In the event that the Company-Wide Relations Committee and the Employer shall fail to reach an agreement on any grievance, either the Employer or the Union may refer said matter to an arbitration board by serving written demand for the same upon the other party. Such demand must be made within fifteen (15) working days after mailing the decision resulting from the meeting of the Employer and the Company-Wide Relations Committee at which the disagreement occurred. In said demand the party demanding arbitration shall name a representative of such party to act on the Arbitration Board. Within five (5) days thereafter the other party shall designate in writing to the party demanding arbitration the name of its representative to serve on the Arbitration Board. The two (2) so selected shall designate a third within seven (7) days thereafter who shall act as the Impartial Chairman of the Board of Arbitration. In case the representative selected by the Union and the representative selected by the Employer are unable to agree within the beforementioned period of time upon the designation of the Impartial Chairman, it is agreed that such Impartial Chairman shall be designated in accordance with the rules of the American Arbitration Association on request of either party. After a demand has been made for arbitration, in the event that the other party fails to designate its representative within seven (7) days of such demand, the party demanding arbitration may request the American Arbitration Association to designate a single arbitrator who shall have the same powers and duties as the Arbitration Board. Said Arbitration Board shall arrive at a decision within ten (10) days, if possible, of the time that evidence and arguments in the matter referred to it for decision are completed and the decision of any two (2) members thereof, or as provided for hereinbefore, the decision of a single arbitrator, if there is but one, shall be final and binding upon the parties; provided, however, that if any matters of law are involved in the decision either party hereto may have recourse to the Courts. The Arbitration Board or the single arbitrator shall have no power to change, amend or alter any of the terms and provisions of this Agreement.

"The expenses and compensation for the Impartial Chairman or the single arbitrator shall be borne equally by the Union and the Employer."

On October 19, 1956, the Employer discharged an employee whose status was apparently that of a senior agent, Herbert Jacobson. As a result of this dismissal, the Union invoked the grievance procedure. On October 31, 1956, the Company-Wide Relations Committee of the Union and the Employer failed to reach an agreement on the grievance, the Employer maintaining that the discharge was justified. On November 7, 1956, Joseph J. Currier, the president of Local 243 and the duly authorized agent of the Union, notified the Employer that the Jacobson case would be taken to arbi-

tration and named himself as the Union arbitrator. On November 13, 1956, the Employer named one Jerry Alajajian to be its representative on the arbitration board. Though this naming was one day late, according to the time schedule prescribed in Art. XIX of the agreement, we take it that the Employer obtains no advantage from its technical noncompliance with the stipulated time condition. Under Art. XIX, Currier and Alajajian were to have seven days within which to agree on an impartial chairman. No such agreement was reached. On November 23, 1956, the Employer received a letter purporting to have come from Currier submitting a list naming six persons any one of whom would be acceptable to the Union as impartial chairman. No reply to this letter was received by the Union. However, we fail to see that the Union's letter of November 23, and the failure of the Employer to reply thereto, have any significance in the present case.

On November 27, 1956, the Union notified the Employer that one Matthew Cooper, the newly elected president of Local 243, was henceforth to be the duly authorized agent of the Union for all purposes under the collective agreement. On June 19, 1957, Cooper presented the names of two additional persons who would be acceptable as the impartial arbitrator and stated that the Union was withdrawing the name of Joseph Currier as the Union arbitrator and replacing him with Cooper. On July 2, 1957, the Employer notified the Union that, according to its construction of the agreement, it was not obliged to arbitrate. On October 4, 1957, the Union demanded arbitration by the American Arbitration Association and notified the Employer and the Association to that effect. Though the Employer objected to arbitration at that point, the Association proceeded to name an impartial arbitrator who set February 14, 1958, as the date for a hearing. This hearing was postponed at the request of the impartial arbitrator and no new date has as yet been set. Meanwhile the present com-

plaint by the Employer was filed in which it sought a court injunction preventing arbitration.

It is to be observed at this point that both parties have proceeded upon the assumption that it is for the court to determine as a preliminary matter whether the grievance involving the discharge of Jacobson is arbitrable under the collective bargaining agreement, or whether the agreement to arbitrate has been rendered unenforceable by noncompliance with the procedural requirements of Art. XIX. The Company's position as stated in its complaint is that it is now under no contract obligation to arbitrate; and hence it asks the court for a decree:

"2. That this Honorable Court declare that the American Arbitration Association does not have jurisdiction to arbitrate the matter of the discharge of Herbert Jacobson.

"3. That this Honorable Court declare the rights and other legal relations of the parties hereto in the matter of the arbitrability of the discharge of Herbert Jacobson."

On the other hand, the Union in its counter-claim maintains that it has complied with each and every procedural term of the contract with respect to the arbitration of the Jacobson termination grievance; and therefore asks the court for a decree declaring that the enforcement of the collective bargaining agreement requires that the American Arbitration Association proceed with its administration and processing of the arbitration of the Jacobson termination grievance and requiring the Employer to comply with the award which shall be entered in said arbitration case.

The district court, in its judgment of April 23, 1958, now under review, did not adopt either theory of the parties. After dismissing the Employer's complaint on the merits, the court did not order that the Jacobson discharge grievance be submitted to arbitration, as requested by the Union, but merely directed the parties "to proceed expeditiously before the Arbitration Board * * *

in order to ascertain that Board's determination of the issue whether defendant proceeded with reasonable diligence in presenting to the Board Jacobson's grievance."

We agree with the district court that one argument made by appellant in this case is utterly frivolous, *viz.*, that the attempted replacement of Currier by Cooper, as the Union arbitrator, somehow rendered the Jacobson grievance no longer arbitrable. If the Union originally designated its arbitrator on time, we think the Union would be within its rights in seeking to substitute an arbitrator where a regularly scheduled election has brought about a change in its leadership, especially when we consider that the delay occasioned by the Company's resorting to the courts might well bring it to pass that the Union's original arbitrator would be unavailable when the arbitration finally materialized. The replacement which eventually occurred in this case did not in any way hinder the arbitration process, and therefore should not be held to destroy the Union's compliance with the procedural requirements of Art. XIX.

We also agree with the district court in rejecting the Union's contention that, in the absence of any specific time limit mentioned in Art. XIX upon an application to the American Arbitration Association for the designation of an impartial arbitrator in default of agreement within seven days by the arbitrators designated by the respective parties, the Company has bound itself, without any limitation of time, to proceed with the arbitration of a grievance whenever the Union may choose to invoke the services of the American Arbitration Association. In view of the strict time limitations spelled out specifically as to all the other steps in the arbitration procedure, as well as in view of the express purpose of promptness set forth in

Art. II, we think the phrase "within a reasonable time" must be implied with respect to a request to the American Arbitration Association for the designation of an impartial chairman.[1] As the district court said: "The absence of this time limit in a carefully negotiated agreement suggests that the parties foresaw that in some situations a long delay might be justified; and flexibility to meet varying situations would be desirable. The present case is peculiarly suitable for a flexible rule."

Where we part company with the district court is in its holding that the determination whether a reasonable time had elapsed in the present case "should be left for initial consideration by the arbitrator, and should not be foreclosed by a court decision preceding the arbitrator's opportunity to rule." The district court apparently would reach this conclusion not only where reasonable men might differ as to whether the Union had proceeded with sufficient diligence to press for arbitration by the American Arbitration Association, but also where no reasonable man could conclude that the Union had acted with due diligence.

The district court saw an analogy in the situation where a jury is permitted to determine if certain conduct constituted "negligence" under the circumstances, whether such determination be deemed a question of fact or a question of law. But if this analogy were apt, we do not understand how the court would be justified in leaving to the arbitrator the determination of whether a reasonable time had elapsed even where no reasonable man could conclude that the Union had acted diligently. However, we do not think the negligence analogy is apposite to determine whether a court of equity, or an arbitrator, should decide the question of the lapse of a reasonable time. We held in Local No. 149, etc. v. General Electric Co. that it was only proper to

---

1. A subsequent collective bargaining agreement between the parties does make explicit what was omitted in the present agreement, viz., that recourse to the Arbitration Association must be made within fifty days of the original demand for arbitration. The inference from this subsequent agreement cuts both ways, and in any event is hardly relevant to the present case.

force a party to proceed before an arbitrator if he had agreed to arbitrate, and that necessarily the court must make the determination as to the scope of the agreement.

■ In the present case we cannot possibly say that the parties had promised in the collective bargaining agreement to submit to arbitration on the preliminary issue of arbitrability. Under Art. XIX it is only a "grievance" which is subject to arbitration. The issue of arbitrability cannot be considered a "grievance", as is apparent from Art. XVIII, labeled "Grievances". The "grievance" which the Union sought to have arbitrated in its counter-claim was the "Jacobson termination grievance". Hence, whether the Employer had agreed to submit this matter to arbitration depends upon a determination by the court, as a preliminary matter, whether all the conditions precedent to arbitration have been fulfilled, including a determination whether the Union acted "within a reasonable time" in pressing for arbitration by the American Arbitration Association. In fact, the district court seems to have acted on this assumption in ruling as a preliminary matter that "within a reasonable time" must be imported into Art. XIX as a condition precedent to the obligation to arbitrate, and also in ruling as a preliminary matter that the substitution of a new Union arbitrator did not render the Union out of compliance with the procedural requirements of Art. XIX.

The district court disposed of the case on cross-motions for summary judgment and did not itself undertake to determine whether the Union had exercised due diligence under the circumstances. The case must therefore be remanded to that court for its determination on that issue, with the Union free to offer evidence in extenuation of its long delay.

The judgment of the District Court is vacated and the case is remanded to that Court for further proceedings not inconsistent with this opinion.