**BOSTON MUTUAL LIFE INSURANCE COMPANY**

v.

**INSURANCE AGENTS' INTERNATIONAL UNION (AFL–CIO).**

Civ. A. No. 58–268.

United States District Court
D. Massachusetts.

March 9, 1959.

Richard J. Walsh and Warner, Stackpole, Stetson & Bradlee, Boston, Mass., for plaintiff.

Isaac N. Groner, Washington, D. C., for defendant.

WYZANSKI, District Judge.

This case is here on a remand from the Court of Appeals with instructions to determine "whether the union had exercised due diligence" in presenting for arbitrability the grievance arising out of the discharge of Herbert Jacobson. The controlling facts are set forth in the original opinion of this Court (In Matter of Jacobson, D.C.Mass., 161 F. Supp. 222), in the opinion of the Court of Appeals (Boston Mutual Life Ins. Co. v. Insurance Agents International Union, 1 Cir., 258 F.2d 516) and in a stipulation filed after the remand.

The employer and the union were parties to a collective bargaining agreement dated January 31, 1956 and effective from May 20, 1955 originally to May 20, 1957, later to June 20, 1957.

The employer discharged Jacobson on October 19, 1956. By November 13, 1956, after normal grievance procedures had been exhausted, the employer and the union had each named its arbitrator. These arbitrators were unable to agree upon the designation of an impartial chairman within the 7 days period established by the contract.

At any time after November 20, 1956 *either* the employer or the union was free to apply to the American Arbitration Association to name the chairman. Neither party did so until on October 4, 1957 the union made a request of the AAA.

The employer contends that the union was so dilatory that its lack of diligence makes the Jacobson claim too stale for arbitration.

Quite rightly, the employer emphasizes how important promptness is in the handling of labor grievances. Promptness protects the worker who may not be able to afford delay. It protects the employer who needs to arrange his daily operations in the light of just principles. It protects the public by not allowing a fire to smoulder until it breaks out in fiery contests between the men and management.

Considerations such as these were not absent from the collective bargaining contract here involved. For at many points the parties stipulated specific time limits for the performance of particular duties. Yet the parties did not stipulate a specific time for the parties to invoke the assistance of the American Arbitration Association in the naming of an impartial chairman when the two arbitrators separately selected by the employer and the union could not agree on a third arbitrator. Instead they allowed either party at any reasonable time to invoke such assistance. Thus they in effect provided that if for either party under the then circumstances time was important, and decision urgent, that party acting alone could invoke the assistance of the AAA. Put in another way, they indicated that time was not particularly important unless either party so indicated.

The employer, for reasons satisfactory to it, did not choose to accelerate the proceedings. The union likewise was in no haste. At first the union did not give any explanation. But by June 7, 1957 the union's counsel indicated to the employer's counsel that the union was awaiting the outcome of the arbitration of the case of one Mabel. The employer had discharged Mabel on October 10, 1956, effective October 19, 1956, a week before the employer had discharged Jacobson. The employer gave quite different reasons in the two discharges. But in each case the employer contested the arbitrability of the discharges. There were thus in the two cases if not one common issue at least two cognate issues. And the statement of the union's counsel on June 7, 1957 was clear notice that the union thought in the Jacobson case it might have better success with the employer or with an arbitration panel if it waited on the outcome of Mabel's case. That was not an inherently absurd posi-

tion. It was a position which might save bothering the AAA or incurring expense of time and money by the AAA, by the two designated arbitrators, by the employer, or by the union. Moreover, if the employer felt differently or supposed it might be prejudiced it could at any moment itself invoke the AAA.

Under these circumstances it is difficult to charge the union with not having acted with due diligence. Indeed the record fails to show that anyone has been in the slightest prejudiced by the delay. There is no indication that any evidence or potential testimony has been lost. There is no reason to believe that claims for back pay have been allowed to grow beyond the possibility of equitable correction. There is no suggestion that some contracts or other arrangements have been adversely affected.

All the risk of prejudice lies in the other pan of the scales. For if this Court were to say that the union did not act with due diligence, Jacobson would have to go without having an impartial hearing of his claim, no matter how meritorious.

The factors just cited are those of real importance. They far outweigh mere calendar recitals. For in a case where the parties did not stipulate a date for notifying the AAA, and where the parties have suffered no prejudice from delay, it would be trivial to pay great attention to the facts that the union made its request to the AAA 11½ months after the employer discharged Jacobson, 10½ months after the union had exhausted normal grievance procedure, 10½ months after the union or the employer each had the right to invoke the AAA, and 3½ months after the expiration of the collective bargain between the employer and the union. Of course, such lapses of time might be highly significant in other cases. But here the delay hurt no one, and could have been brought to an abrupt end by the employer at any moment if, seeking a prompt disposition, it had invoked the AAA's assistance.

Plaintiff's complaint dismissed. Judgment for defendant as prayed in the counterclaim.