BRASS AND COPPER WORKERS FEDERAL LABOR UNION NO. 19322, AFL-CIO, Plaintiff-Appellant,

v.

AMERICAN BRASS COMPANY, Kenosha Division, a Subsidiary of Anaconda Copper Company, Defendant-Appellee.

No. 12683.

United States Court of Appeals
Seventh Circuit.

Dec. 22, 1959.

**850**

David Leo Uelmen, David Previant, Milwaukee, Wis., Hugh Hafer, Goldberg, Previant & Cooper, Milwaukee, Wis., of counsel, for appellant.

Frederick H. Prosser, Milwaukee, Wis., Shaw, Muskat & Paulsen, Milwaukee, Wis., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

This is an action for specific performance under § 301 of the National Labor Relations Act, 29 U.S.C.A. § 185, to compel arbitration under the relevant section of a collective bargaining agreement between the parties. The district court sustained defendant's motion to dismiss plaintiff's complaint on the merits, and this appeal followed.

Appellant Brass and Copper Workers Federal Labor Union No. 19322, AFL-CIO (Union) and appellee American Brass Company, Kenosha Division, a Subsidiary of Anaconda Copper Company (Company) entered into an Amended Pension Plan Agreement and a Collective Bargaining Agreement (Agreement). The latter Agreement provided for arbitration under two separate sections. Article VII of the Agreement, entitled "Grievance Procedure," provided for a series of "steps" to be followed in the procedure of adjusting "any complaint, controversy or grievance" involving the "terms" of the Agreement. After conferences between the Company and Union at successively higher levels, provision was made for a joint or unilateral request for the intervention of the Federal Mediation and Conciliation Service (Mediation Service). Article VII expressly retained for both parties the right of arbitration in the case of discharges for cause or disciplinary layoffs, but such requests were required to be made "in writing *within ten (10) days after the Company's final answer in writing to the Union.*" (Emphasis added.)

Article VIII of the Agreement, entitled "Arbitration," provided for arbitration of "any dispute" involving "the interpretation or application of any part of this Agreement which cannot be settled between the parties." This article also specified a time limit for submission to arbitration of "ten (10) days following the date when it is determined that the parties cannot agree." The Article further required that the issues for decision be set forth in writing and that arbitrators confine their decision to such issues.

Thus both articles provided that arbitration must be requested within ten days as above set out. The contract did not, as such, indicate whether a court or an arbitrator should determine that the parties had complied with this requirement.

Both the Pension Plan and the Collective Bargaining Agreement were in effect on April 1, 1955, when the Company compulsorily retired all employees who were then 69 years of age or older. Such employees were not eligible for pensions under the Pension Plan [1] because of insufficient service with the Company.

On April 4, 1955, the Union orally and in writing [2] protested the compulsory re-

1. The Pension Plan Agreement provided for the termination of the eligible employee's services following his sixty-eighth birthday, unless written permission was given to continue service beyond that date. On January 1, 1955, Company had retired all workers eligible under the Pension Plan.

2. "In accordance with the Agreement now in effect between the American Brass Company and Local No. 19322, F.L.U.-A.F.L., the Union protests the illegal discharge of certain employees, listed in your communication to the Union under date of February 14, 1955, because of age. We further request reinstatement of said employees with all rights restored and retroactive pay for time lost because of such illegal discharge." (Relevant section of Union's letter)

tirement of the non-pensioners, complaining that such retirements constituted discharges without "cause," contrary to the provisions of the collective bargaining agreement, and requested reinstatement and reimbursement for any loss suffered by reason of the compulsory retirement. The Company refused to reinstate the employees; it never gave a written answer to the Union's letter of April 4th.

On April 12, 1955, the Union wrote the Company as follows:

"In accordance with Article VII Section 4 lines 199 to 202 we request that the Company join with us in submitting the question of illegal discharge of employees mentioned in our communication to you under date of April 4, 1955, to the U. S. Department of Conciliation for disposal.

"Please advise at your convenience."

The Company's reply of April 14, 1955 was as follows:

"We acknowledge receipt of your communication of April 12, 1955 wherein you request that the Company join you in seeking the services of the U. S. Department of Conciliation.

"The Company does not consider that the retirement of certain employees referred to in your letter of April 4, 1955 to be illegal discharges and consequently cannot join you in your request."

After the Company's refusal to join in a mutual request to submit the grievance to the Mediation Service, the Union did not immediately request arbitration, but made a unilateral request for the Mediation Service to intervene.

On May 23, 1955, Virgil H. Burtz, a Commissioner of the Mediation Service, after having conferred with the Company, informed the Union that "very little, if anything, could be gained by a joint conference with one of our Commissioners present, as both parties' positions are firm" and that the parties were "free to proceed with arbitration in this matter."

On June 6, 1955, thirteen days after receipt of Burtz's letter, the Union requested arbitration of the discharges in the following letter:

"In accordance with Section 4 of Article VII the Union has contacted the Federal Mediation & Conciliation Service requesting that they mediate the dispute between the American Brass Company and Local No. 19322 regarding the discharge of employees 68 years of age and over. We have been advised that they are unable to mediate said dispute at this time. We are requesting that in accordance with the terms of our agreement that this question be submitted to arbitration. Please advise."

No written reply was ever received to this letter. On August 7, 1957, the Union instituted this action to compel arbitration of the dispute.

In the action below, the parties conceded the substantive arbitrability of the discharge (*i. e.*, that the dispute is the type that the parties had agreed to arbitrate), but the Company contended that the merits of the case could not be reached because the Union had not followed the *procedural* requirements of the collective bargaining agreement. Specifically, the Company contended that the Union had not (as required by the Agreement) filed its request to arbitrate within ten days after the receipt of the Company's "final answer" of April 14, 1955. The Union argued that its filing was timely, or at least, that there was no prejudice even though the request for arbitration was filed delinquently. This conflict obviously required an interpretation of the contract.

But there was further conflict between the parties regarding *who* should resolve this problem. The Company stated that it was the responsibility of the court, in a suit for specific performance, to determine whether the Company had *broken its promise* to arbitrate. This determination must include not only the issue of whether the Company had agreed to arbitrate the subject matter (substantive

arbitrability) but also whether the Union had complied with the agreed procedure to bring the grievance to arbitration (procedural arbitrability). The Union, however, contended that the latter matter should be determined by the arbitrator himself prior to his consideration of the merits.

The district court held that under the contract in question, the issue of procedural compliance necessary to bring the matter before the arbitrator was itself arbitrable under Article VIII as an "interpretation * * * of any term of the agreement," but that since the dispute was not negotiated below and *formally* made a part of the grievance procedure, it was not an arbitrable dispute properly subject to a decree for specific performance.

. Since the dispute over procedural arbitrability had not been formally processed through the grievance procedure, the trial court could find no inference from the Agreement that the parties intended this issue to be submitted to the arbitrator. Relying on the case of Boston Mutual Life Ins. Co. v. Insurance Agents' Int. Union, 1 Cir., 1958, 258 F.2d 516, the court determined the issue was one for it to decide. Proceeding with such determination and analysis of the Agreement, it held that under the procedure of Article VII, the Union must consider the Company's letter of April 14, 1955 as a "final answer." But even assuming the Union was proceeding under Article VIII (although its letter of June 6 mentioned only Article VII), Burtz's letter of May 23 was held to be a "final answer," and the request for arbitration was not made until thirteen days later. Since this was in excess of the time limit stated in "unambiguous language" in the Agreement, the court refused to grant specific performance, holding that the Union "has lost its rights to enforcement of the arbitration promise by non-compliance."

This appeal is based on dual grounds, first, that the issue of compliance with the Agreement is for the arbitrator to

decide, and second, if for the court, that the court below erred in its determination of the issues under the Agreement.

The question of procedural arbitrability is therefore drawn in sharp terms. The necessity for determining this issue flows, essentially, from the case of Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, in which the Court held that promises to arbitrate were specifically enforceable under § 301 of the Taft-Hartley Act and that federal rules of decision controlled cases under this section. Since there was no extensive residuum of federal law except the express provisions of the Taft-Hartley Act on this subject, the Court charged the judiciary to fashion a federal common law on a case-by-case basis. In exercising this traditional judicial function, courts were to be guided by the purposes of national labor legislation and could absorb state rules of decision as federal law when such were consistent with the goals of national labor policy.

Subsequent to the holding that § 301 provides a forum for a party to bring an action to compel arbitration under a collective bargaining agreement, federal courts have been faced with the problem of determining when it is proper to order arbitration. The initial problem involved substantive arbitrability, which in turn, required a delineation of the power and responsibility of judges and arbitrators. It is obvious that an arbitrator's range of decision is necessarily restricted by a court's prior determination whether the parties had agreed to arbitrate the subject matter of the dispute.

In each case it is a collective bargaining agreement that the court must interpret. In certain instances the parties expressly indicate that arbitrability is for the courts. See Local 201, Intern. Union of Elec. Radio and Mach. Workers, A.F.L.-C.I.O. v. General Electric Company, 1 Cir., 1959, 262 F.2d 265. Many times parties voluntarily submit arbitrability to the arbitrators.[3] The difficult

3. A survey conducted by the American Arbitration Association of 1,728 grievances in 1954 shows that the issue of arbitrability was raised in a total of 133 cases,

case arises, as here, when the agreement does not expressly indicate who should decide this issue.

■ It is now well-settled that issues of substantive arbitrability are for the courts to determine. The keystone decision was Local No. 149 of Am. Federation of Technical Engineers (A.F.L.) v. General Electric Company, 1 Cir., 1957, 250 F.2d 922, certiorari denied 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813. Chief Judge Magruder there concluded that when one of the parties to a collective bargaining agreement appears before a court requesting a decree ordering spe-

cific performance of a contract to arbitrate, the court "has the inescapable obligation to determine as a preliminary matter that the defendant has contracted to refer such issue to arbitration, and has broken this promise." Id., 250 F.2d at page 927.[4]

In this decision Chief Judge Magruder examined the contention of those commentators who urge that the issue of substantive arbitrability be left, in the first instance, for the arbitrator.[5] But he concludes that these arguments are not controlling in the case where a party comes to the court for specific perform-

or 7.7%. In 41 of these cases, arbitrability was the sole issue. Only three of 1,183 cases studied involved court action to compel specific performance of the promise to arbitrate. American Arbitration Association, Procedural and Substantive Aspects of Labor Management Relations.

4. In addition, see New Bedford Defense Products Division of Firestone Tire & Rubber Co. v. Local 1113, Etc., 1 Cir., 1958, 258 F.2d 522 (rejecting the "Cutler-Hammer doctrine"); Engineers Ass'n v. Sperry Gyroscope Co., Etc., 2 Cir., 1957, 251 F.2d 133; Lodge No. 12, Dist. No. 37, International Ass'n of Machinists v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467; Refinery Employees Union of Lake Charles' Area v. Continental Oil Co., 5 Cir., 1959, 268 F.2d 447; International Union United Auto Aircraft v. Benton Harbor Mal. Ind., 6 Cir., 1957, 242 F.2d 536 (pre-Lincoln Mills); American Lava Corp. v. Local Union No. 222, Etc., 6 Cir., 1958, 250 F.2d 137; United Steelworkers of America v. American Mfg. Co., 6 Cir., 1959, 264 F.2d 624, 628 (holding that a "frivolous, patently baseless" grievance, although substantively arbitrable was not arbitrable under the agreement between the parties); Local 1912, Ass'n of Machinists v. U. S. Potash Co., 10 Cir., 1959, 270 F.2d 496.

5. "We are aware of a viewpoint urged in responsible quarters that the interests of effective labor arbitration would best be served by committing to the arbitrator in the first instance the question of arbitrability, that is, the question whether there is any issue to be arbitrated under the collective bargaining agreement. It is said that a collective bargaining contract is a very special type of docu-

ment, in respect of interpretation, as to which an arbitrator has certain advantages over a court; that a collective bargaining agreement, though embracing a multitude of terms covering numerous employees working at various tasks, cannot be expected to have pin-pointed each of many problems to be dealt with in relations between the management and the union; that the contract instead contains unexpressed assumptions that many procedures and practices will continue; that under the more simplified and speedy procedures of an arbitration, more evidence with regard to these unexpressed assumptions may be available, and an arbitrator may have the additional advantage of background knowledge derived from past experiences with the parties. Therefore it may be desirable in the first instance to have an arbitrator pass on the threshold question of arbitrability, instead of running the possible risk that a court, in the guise of ruling on this preliminary question of the jurisdiction of the arbitrator, may in effect make a ruling upon the merits of the asserted grievance. See Summers, 'Judicial Review of Labor Arbitration or Alice Through the Looking Glass,' 2 Buffalo L.Rev. 1 (1952); Cox, 'Some Lawyers' Problems in Grievance Arbitration,' 40 Minn.L.Rev. 41 (1955); Clifton, 'Arbitration and Arbitrability,' 3d Annual Conference on Labor N.Y.U. 187 (1950). See also Greyhound Corp. v. Division, 1384 of Amalgamated Association of Street, etc., Employees of America, 1954, 44 Wash.2d 808, 271 P.2d 689. See also an address by Professor Cox at the University of Cincinnati Conference on Labor Arbitration, November 14, 1957, entitled 'Current Problems in the Law of Grievance Arbitration.'" 250 F.2d at page 926.

ance,[6] but are important and persuasive for the parties at the bargaining table in writing a contract which grants arbitrators wide scope in their decisions and even in expressly reserving such a determination for the arbitrator.[7]

In the sole post-Lincoln Mills case under § 301 which has involved procedural arbitrability, Boston Mutual Life Insurance Co. v. Insurance Agents' Int. Union, 1 Cir., 1958, 258 F.2d 516, Chief Judge Magruder held that the court was unwilling to "whittle away" the holding in Local No. 149 and determined that under the rationale of that case, procedural arbitrability is in the first instance, a matter for the courts to determine.[8]

In Boston Mutual, the employer requested a declaratory judgment that the union's grievance claim with respect to the discharge of an employee had not been submitted for arbitration within a reasonable time and was therefore not subject to arbitration. In his holding, Chief Judge Magruder again referred to the large body of opinion which argues that arbitrators should be given wide sway, but concludes this is relevant to the bargaining table, not to a decree for enforcement. He stated, however, that. "practical considerations as to what. would best promote effective labor arbitrations," id., 258 F.2d at page 517,. might be an element in construing the scope of ambiguous language as to the matters sent to arbitration. However, the court concluded that the "inescapable obligation" of determining the issue of seasonable submission to arbitration was for the court,[9] and remanded for that consideration.[10]

■ We approve the rationale of the decision in Boston Mutual. In the case where a collective bargaining agreement gives no indication of the intended party to determine the issue of procedural arbitrability, it is, in the first instance, for the court to make this decision in a suit, brought to compel arbitration. Accordingly, we hold that the district court was correct in considering this issue.

■ Further, having found that the district court properly considered the issue of procedural arbitrability, we find no error in its disposition of this case.

6. A state case heavily relied upon by appellant here, Southwestern New Hampshire Transp. Co. v. Durham, 1959, 102 N.H. 169, 152 A.2d 596, holds that procedural arbitrability is for the arbitrator to decide. This case, however, was an appeal from the prior ruling of arbitrators. It does not meet the core of the problem in an action to compel arbitration, in which the court has to determine how extensively it would examine whether the reluctant party had breached its promise to arbitrate.

7. Local No. 149 was based both on an independent analysis of the court's responsibility under § 301 and on the practice under the United States Arbitration Act. In a prior decision to Lincoln Mills, Local 205, United Elec., Radio and Mach. Workers of America (UA) v. General Electric Company, 1 Cir., 1956, 233 F.2d 85, 101, the court had determined a similar case under the Arbitration Act. On certiorari, in an opinion accompanying Lincoln Mills, General Electric Co. v. Local 205, 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028, the Court affirmed the judgment, but stated that it followed "a different path * * * [to] the same result." 353 U.S. at page 548, 77 S.Ct. at page 922.

8. In a pre-Lincoln Mills case, decided under Pennsylvania law, the district court sent to the arbitrator · the question of whether an alleged two-day violation of agreed procedure precluded bringing the action. The court stated, "Arbitration is here to stay, and particularly where the parties have elected to submit their differences to it, the courts should not try by hair-splitting decisions [to] hamstring its operation." Insurance Agents' Intern. Union A.F.L. v. Prudential Ins. Co., D.C. E.D.Pa.1954, 122 F.Supp. 869, 872.

9. Commentators have been critical of the result in Boston Mutual. See Gregory, The Law of the Collective Agreement, 57 Mich.L.Rev. 635, 638 (1959); Cox, Reflections upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1511 (1959).

10. On remand, the district court held that the application for arbitration was made with due diligence, depending to a great degree on the fact that there was no substantial prejudice occasioned by the delay. Boston Mutual Life Ins. Co. v. Insurance Agents' Int. Union, D.C.Mass. 1959, 171 F.Supp. 125.

Even considering the events most favorable to appellants (that the letter of May 23 was the "final answer"), appellant's request for arbitration came too late under the terms of the Agreement, since it was made thirteen days after receipt of the final answer.

The judgment of the district court dismissing plaintiff's complaint on the merits is

Affirmed.