**UNITED BRICK AND CLAY WORKERS OF AMERICA, AF of L-CIO, DISTRICT COUNCIL NO. 11; and United Brick and Clay Workers of America, AF of L-CIO, Local 661, Plaintiffs,**

**v.**

**GLADDING, McBEAN & COMPANY, a corporation, Defendant.**

**No. 1320-60-Y.**

United States District Court
S. D. California,
Central Division.

March 8, 1961.

Charles H. Warren, Los Angeles, Cal., for plaintiffs.

Latham & Watkins, by R. W. Lund, J. S. Welch, and I. M. Price, II, Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

An Agreement entered into on May 25, 1960, which by its terms was made effective as of May 2, 1960, and was to continue in full force and effect until April 15, 1963, between United Brick and Clay Workers of America, to be hereafter called the "Union", and Gladding, McBean & Company, a corporation, to be referred to as the "Company", contained an elaborate grievance procedure, Article XIII, which may be briefly summarized.

A grievance is defined as:

"any alleged violations of the terms of provisions of this Agreement by the Company."

Four steps are provided. Step One calls for an *informal* discussion by the employee and the shop steward of the grievance with the foreman, who must give his answer within two working days. If a satisfactory settlement has not been reached in Step One, the grievance must be reduced to writing and referred by the shop steward of the department to the shop committee of the plant. If the Union considers the grievance justified, the shop committee must file a written grievance with the superintendent and request a Second Step meeting.

A written answer to the grievance must be given within three working days. If the Union is not satisfied with the Company's disposition in the Second Step, it may appeal the grievance to the Third Step by written notice to the plant superintendent within *five working days* from the date of the Company's written answer to the Second Step. Failing to reach a satisfactory settlement under the Third Step, and if the issue involves the interpretation or application of the provisions of the Agreement,

"the Union may, within two (2) days following the first regular meeting of the Local thereafter, (but in no event later than thirty-one (31) days after receiving the Company's Step Three answer), failing settlement, serve upon the Company a written demand that said grievance be arbitrated."

The grievance clause contained also the following provision which is pertinent to the discussion to follow:

"(i) Failure of the Union to process a grievance within any of the time limits specified in Steps One (1), Two (2), Three (3), and Four (4), *shall render the grievance void,* unless an extension of time is agreed upon in writing between the parties." (Emphasis added.)

Elsewhere in the Contract, Article II (d), there is the following provision:

"(d) The waiver of any breach or condition of this Agreement by either party shall not constitute a precedent for any further waiver of such breach, or condition."

Alleging violation of this Agreement by the Company, the named Union and District Council No. 11 instituted this action for specific performance under Section 301 of the Labor Management Relations Act of 1947, as amended. 29 U.S.C.A. § 185. The complaint, as finally amended, alleged violation of the grievance provisions of the Agreement by refusing to process the grievance filed on

September 7, 1960. The controversy turns around the following facts which appear from the record:

On June 30, 1960, two written seniority grievances were presented to James A. York, plant superintendent, in the Second Step of the grievance procedure. One, dated June 24, 1960, was the grievance of Elmer Babcock; the second, undated, was the grievance of Elmer Babcock, Ignacio Alvarez, Sr. and Frederick Lona. These grievances, after an agreed extension of time, were discussed between the Union shop committee and the Company's superintendent, James A. York, on July 19, 1960, at which time he orally denied both grievances. On the same date, or on July 20, 1960, York returned the two grievances to the Union shop committee, with his Step Two reply written thereon, *dated July 19, 1960*, denying the grievances.

By letter dated July 29, 1960, the plaintiffs requested a Step Three meeting with the defendant on both grievances. The defendant replied by letter of August 4, 1960, stating that it considered the grievances "void", because there was no written notice of appeal within five working days of the Step Two answer, as required by the Agreement.

On August 12, 1960, a meeting was held between defendant and plaintiffs to discuss the timeliness of the appeal of the grievances. At such meeting, and a later one on August 19, 1960, the subject matter of the grievances were discussed, but the defendant maintained its position that it considered the grievances void.

By letter to the plaintiffs dated August 22, 1960, the defendant reiterated its position that the grievances were void because they were not appealed within the Agreement-prescribed time. By letter of August 26, 1960, the plaintiffs demanded that the defendant arbitrate the grievances, and the defendant refused to do so in letter dated August 31, 1960.

Admittedly, the Company refused to go into the Third Step because no written notice, as required by the grievance clause, was given to them within the five day period. This position the Company maintained in the discussions had with the Union's representatives thereafter and in the written communications just referred to. This position it maintains to date. This fact makes it important to consider whether the refusal to process is a matter which involves the "interpretation or application of the provisions of the Agreement" so as to call, *ipso facto*, for a determination by an arbitrator.

As already appears, the grievances which were the subject of the discussions related to claimed preference for employment and seniority rights of certain employees. As the conditions as to both stemmed from "seniority" as spelled out fully in the contract, Article VIII, any complaint by any employees that their rights, in this respect, were being disregarded would be a "grievance" which would require the interpretation or application of the contract in the light of the facts claimed to constitute the violation by the Company.

■ There is no disagreement between the parties as to this. The disagreement begins when we consider the claim of the Union that the failure to process the grievance, because of its untimeliness, is a "grievance", which, if not satisfactorily settled by further processing, would be the subject of determination by an arbitrator. We cannot agree. For courts have held that in actions of this character the question whether the matter *is* arbitrable, and *there is* the obligation to arbitrate, is one to be determined by the courts *and not* by the arbitrator. Local 205, United Electrical, Radio and Machine Workers of America (U E) v. General Electric Company, 1 Cir., 1956, 233 F.2d 85, 101; Davenport v. Proctor & Gamble Manufacturing Co., 2 Cir., 1957, 241 F.2d 511, 515–516, 63 A.L.R.2d 1350; International Union, etc. v. Benton Harbor Malleable Industries, 6 Cir., 1957, 242 F.2d 536, 539–540; Local 149 of American Federation of Technical Engineers v. General Electric Company, 1 Cir., 1957, 250 F.2d 922, 927, certiorari denied 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.

2d 813; Boston Mutual Life Insurance Company v. Insurance Agents' International Union, 1 Cir., 1958, 258 F.2d 516, 521–522; Brass & Copper Workers Federal Labor Union No. 19322 AFL-CIO v. American Brass Company, 7 Cir., 1959, 272 F.2d 849, 853–854; Pittsburgh Railways Co. v. Amalgamated Association of Street, Electric Railway & Motor Coach Employes of America, D.C.W.D.Pa., 1959, 176 F.Supp. 16, 23.

The principle is briefly summed up by Chief Judge Magruder in Boston Mutual Life Insurance Company v. Insurance Agents International Union, supra:

"Under Art. XIX it is only a 'grievance' which is subject to arbitration. The issue of arbitrability cannot be considered a 'grievance', as is apparent from Art. XVIII, labeled 'Grievances'. The 'grievance' which the Union sought to have arbitrated in its counterclaim was the 'Jacobson termination grievance'. Hence, whether the Employer had agreed to submit this matter to *arbitration depends upon a determination by the court, as a preliminary matter, whether all the conditions precedent to arbitration have been fulfilled, including a determination whether the Union acted 'within a reasonable time' in pressing for arbitration by the American Arbitration Association.*" 258 F.2d at page 522. (Emphasis added.)

And the Court of Appeals for the Seventh Circuit, in adopting and following this decision and its reasoning, states pithily, in Brass & Copper Workers Federal Labor Union No. 19322 AFL–CIO v. American Brass Company, supra:

"It is now well-settled that issues of substantive arbitrability are for the courts to determine." 272 F.2d at page 853.

■ The validity of these rulings has not been impaired by the later decisions of the Supreme Court in United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 567–569, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed. 1424. In these decisions the high court held clearly that the question as to whether a particular matter is required to be arbitrated by the terms of the arbitration clause *is* for the court. This is stated explicitly in United Steelworkers of America v. Warrior & Gulf Navigation Co., supra:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether *the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.*" 363 U.S. at page 582, 80 S.Ct. at page 1353.[1] (Emphasis added.)

---

1. The denial of certiorari by the Supreme Court does not ordinarily carry with it the implication that the Court necessarily approves the ruling of lower courts. United States v. Carver, 1923, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L. Ed. 361; Brown v. Allen, 1953, 344 U.S. 443, 492, 73 S.Ct. 397, 97 L.Ed. 469, per Frankfurter, J. However, we have a different situation here. The three cases just cited were decided on June 20, 1960. On June 27, 1960, the Supreme Court denied certiorari in Brass & Copper Workers Federal Labor Union No. 19322 AFL-CIO v. American Brass Company, 7 Cir., 1959, 272 F.2d 849.

Brass & Copper Workers Federal Labor Union No. 19322, AFL-CIO v. American Brass Company, 363 U.S. 845, 80 S.Ct. 1609, 4 L.Ed. 1728. It is inconceivable to us that the court would have denied certiorari, a denial in which all the justices, both those in the majority and those in the minority who participated in the case joined, if it had felt that the teaching of that case, as to the province of the courts in determining arbitrability, was contrary to the principles promulgated in United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347.

Federal courts which have interpreted the rights of the courts in actions of this character, since these latest Supreme Court decisions were rendered, see in the statement just referred to the assertion of the power of the courts to determine whether the parties *have or have not* agreed to submit to arbitration a particular matter. See, Local 201, Intern. Union, etc. v. General Electric Company, 1 Cir., 1960, 283 F.2d 147, 149; Zdanok v. Glidden Company, D.C.N.Y., 1960, 185 F. Supp. 441, 447–448; Local 725, Intern. Union of Operating Engineers v. Standard Oil Co. of Indiana, D.C.N.Dak., 1960, 186 F.Supp. 895, 898–899.[2]

If the principle of these cases is applied to the problem before us, the conclusion is inescapable that the failure to give the required five days written notice after the Step Two answer released the Company from the obligation to process the grievance through subsequent steps. At no time did the Company waive the limitation or extend the time. Indeed, the testimony in the record shows clearly that the Union representative was warned, after the Company's written answer to the Second Step, that any request for the Third Step *would have to be in writing within the five day period.*[3] And the Agreement specifically states that the failure of the Union to process a grievance within any of the time limits specified in the four steps,

"shall render the grievance void, unless an extension of time is agreed

---

2. As we read these cases they are so clearly determinative of the issue before us, and so persuasive, that we need not discuss in detail or try to distinguish State court cases, such as Southwestern New Hampshire Transportation Co. v. Durham, 1959, 102 N.H. 169, 152 A.2d 596, or the numerous decisions by arbitrators *and opinions of writers*, which have been called to our attention as expressing a contrary view. It should be noted, however, that Chief Judge Magruder in *Local 149 of American Federation of Technical Engineers v. General Electric Company*, 1 Cir., 250 F.2d 922, at page 926, takes cognizance of the contrary view and refers to some of the writings to which counsel for the plaintiffs has also referred. And Chief Judge Hastings in *Brass & Copper Workers Federal Labor Union No. 19322 AFL-CIO v. American Brass Company*, supra, reproduces as footnote 5, 272 F.2d at page 853, Judge Magruder's comments. In Footnote 6, he distinguishes the Southwestern New Hampshire Transportation Co. v. Durham, supra, case by stating

"It does not meet the core of the problem in an action *to compel* arbitration, in which the court has to demine how extensively it would examine whether the reluctant party had breached its promise to arbitrate." 272 F.2d at page 854. (Emphasis court's.)

And in Footnote 9, he notes the latest (1959) writings "critical of the result in *Boston Mutual*". 272 F.2d at page 854. But the court adheres to the principles announced, notwithstanding these criticisms.

3. This appears from testimony given by the defendant's Plant Superintendent, James A. York, at the trial. After stating that the Union representative told him that "he thought the union wanted to appeal to the Third Step" he declares that he warned that the written demand for it should reach him on time. We quote from the transcript of record which we have caused to be made:

"By Mr. Lund. Q. Did Mr. Emanuelli (a Union steward) tell you that the Union or the committee wanted to appeal this to the Third Step? A. Not in those words Dick. He said *he thought* they wanted to appeal to the Third Step. * * *

"Q. * * * *Did Mr. Sykes or Mr. McKenzie, (other designated Union stewards) at any time, tell you that the Union wanted to appeal these to the Third Step?* A. *No sir.*

"Q. *Any other Union member, at any time, tell you that the Union wanted to appeal or was appealing this to the Third Step?* A. *No sir.*

"Q. Did Mr. Quintero (President of the Union in 1960) or Mr. Emanuelli or any of the committee or any Union member, at any time, *request to you that the Union be given a Third Step grievance meeting?* A. *No sir.*

"The Court. *Did they ever request of you for an extension of time within which to make such a request while they made up their minds?*

"The Witness. *No sir.* * * *

upon in writing between the parties."

Allusion has already been made to the provision of the Agreement that the waiver of the breach of any condition of the Agreement shall not constitute a precedent

"for any further waiver of such breach of condition."

Notwithstanding this, testimony was allowed as to prior practices in order to permit the plaintiffs to lay a factual foundation for what seems to be called, in labor management relations, "entrapment", i. e., placing the Union in a position where they are led to believe that certain departures from strict procedural requirements of an Agreement might be tolerated.

■ In so doing, the court felt that a factual situation might develop from which a waiver of strict compliance might be inferred. An analogous situation arises under leases in which time is made the essence of the undertakings of the parties. Notwithstanding such provisions, the courts have held that if delinquency in performance as to the payment of rent or other continuing covenants by the tenant are tolerated by the landlord and he accepts performance out of time, a waiver of strict compliance may be inferred until the landlord gives written notice that beginning at a certain time strict compliance will be required. 51 C.J.S. Landlord and Tenant § 117(d) (2), pp. 708–709; Daly v. Ruddell, 1902, 137 Cal. 671, 674–675, 70 P. 784; Stevinson v. Joy, 1912, 164 Cal. 279, 285, 128 P. 751; Lifton v. Harshman, 1947, 80 Cal.App.2d 422, 433, 182 P.2d 222. Cf. Talbot v. Gadia, 1954, 123 Cal.App.2d 712, 719, 267 P.2d 436.

■ The testimony adduced shows two or three instances in which, *under a prior agreement*, oral requirements for the Third Step, within the time limit, were accepted or acted upon by the Company. These are not sufficient to constitute a waiver of strict compliance with the language of the clause in the present Agreement, which we have just quoted.

The strict and rigid requirements as to written demands and notices and time limits were the subject of negotiations before the present Agreement was entered into. They were insisted upon by the Company in order to overcome the loose practices which had developed in the negotiations between the Company and the Union under the older Agreement.

"By Mr. Lund. Q. On these two grievances, your disposition was dated July 19th. *I understand you delivered it July 20th.* Under the contract what was the last day within which a written notice of appeal is allowed to the Third Step? A. *It would be July 27, on Wednesday.*

"Q. Now before July 27th did you, at any time, speak to any Union official about the desirability or the necessity of getting in a written notice of appeal within such five days, if they wanted to take it on? A. Mr. Emanuelli indicated he thought the committee wanted to process in Third Step. This was on Monday the 25th. *I told him that he must be aware of the contract requirement that we should be notified in writing by July 27th, on Wednesday. We had to have it in writing by then or it could not be accepted.*

"The Court: *Was that a part of the same conversation in which he told you that he thought they would appeal?*

"The Witness. *Yes, that is right.*

"By Mr. Lund. Q. *You did not receive any oral or written notice from Mr. Pelfrey,* (the District Council representative) *or any other official of the Union, that the Union was appealing to the Third Step?* A. *No sir.* * * *

"Q. Yes. Anybody on the District or his office or any representative of any business agents. A. No sir, they did not."

In brief, as already appears, the two step grievances were presented in writing on June 24, 1960. One covered Elmer Babcock, the other was on behalf of Ignacio Alvarez, Sr., Elmer Babcock and Frederick Lona. They were rejected on July 19, 1960. Thereafter, no request for a Third Step was received until July 29, 1960, when District Council No. 11, to whom the Union referred the grievance, wrote asking for a Third Step. *This was too late.*

Assuming, therefore, that procedural non-compliance had been tolerated under the old Agreement, the Company's insistence on the stricter clauses as to notices required and waivers in the new Agreement would, under the cases cited, *constitute notice to the* Union that they would not be tolerated under the new Agreement. Granted, therefore, that the doctrine of "entrapment" exists, under certain conditions in labor management relations, the new contract prevents its assertion. And the Union had no reason to believe that any departure from procedural requirements would be encouraged or tolerated under the new Agreement.

The grievances under discussion *were the first* to arise under the new Agreement. And there is no proof in the record that the Unions, in failing to make timely written demand for the Third Step, relied on anything done by the Company during the negotiations, which lulled them into a sense of security. Nor is there any credible testimony from which the inference can be drawn that noncompliance with the requirement of timely written notice is traceable to any act of the Company's representatives during the discussions. Both under the general principles of law discussed and under the wording of the Agreement, the failure to comply with the Agreement as to written notice excused the Company from continuing the negotiations and rendered the grievance void.

In sum, the plaintiffs are not in a position to turn their own failure to make the timely written demand into a "grievance", i. e., a violation of the terms or provisions of the Agreement by the Company. Such failure relieved the Company of any obligation to process further the grievances or to continue any negotiations leading to arbitration or both. For, in the language of the Court in United Steelworkers of America v. Warrior & Gulf Navigation Co., supra,

"a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." 363 U.S. at page 582, 80 S.Ct. at page 1353.

Here the Company had agreed to further process the grievance *only* if timely demand therefor in writing was made. None having been made, there is no obligation to process further or to arbitrate and nothing to arbitrate.[4]

Judgment will therefore be for the defendant.

4. Apposite here is the language of one of the Judges of the Supreme Court of New York, used in a case in which the Union brought proceedings to compel arbitration of grievances under the arbitration provisions of a collective bargaining Agreement between the employer and the Union. The employer resisted the action and moved to stay arbitration, upon the ground that *the procedural steps prescribed in the Agreement had not been complied with.* In granting the motion to stay and denying the motion to compel arbitration, Judge Charles A. Loreto said:

"The arbitration agreement sets forth the several procedural steps to be followed in order to institute arbitration proceedings. The first step required *is written notice of the grievance*, which must be given within 30 days after the act complained about took place. *Such written notice clearly was not given within the 30-day period.* The court does not agree with the contention that the company intended that the first two procedural steps might be by-passed or that *the manner of the disposition of other grievances in the past, operated as a waiver of the requirement of a written grievance.* Whatever may have been the manner of disposition of other grievances in the past, it appears that in this case the company *insisted* upon adherence to the procedural steps precedent to arbitration specified in the agreement. As the union invokes the court's aid by virtue of and under the agreement, not having complied with its terms, *it is not entitled to the relief here* requested." Local 459, International Union of Electrical, Radio & Machine Workers AFL-CIO v. Remington Rand, 1959, 19 Misc.2d 829, 191 N.Y.S.2d 880, 881–882. (Emphasis added)